Thank you, Your Honors. Your Honors, may it please the Court, my name is Jared Richards and I represent the appellants Hiawatha and Monica Hoeft-Ross in this matter. And I'd like to start out by saying that it is an honor and a privilege to serve in the Ninth Circuit pro bono program, and I thank you for the opportunity. The Hoeft-Rosses bring this appeal because they were effectively robbed of their full day in court. Upon the misrepresentation of counsel and without any warning or consideration of a lesser sanction Mr. Richards, let me ask you a question that comes back around to that. That is, as I understand it, their summary judgment was entered on the ground of no triable issue of fact on financial qualification. Yes, Your Honor. No Rule 56-F affidavit was filed indicating what discovery would have been necessary in order to respond to the summary judgment motion. And his financial qualification would, in any event, appear to be information available to him. So that being so, why does anything prior to that, that is, why is the discovery sanction even alive or relevant? Well, Your Honor, first of all, we have no idea what the Hoefts would have accepted as financial qualifications. That's simply not on the record. And that's not information that my clients could have provided. We simply don't know. That's their financial qualification, isn't it? See, that's where I'm having a little trouble understanding because if the question was whether he was financially qualified to rent the house. And all of those records are within your client's purview, aren't they? Well, his financial, his own financial records, yes, they were within his purview. However, the actual requirements, what the Hoefts would have accepted as being financially sufficient to rent the house, that's within the Hoefts' purview. And my clients did not have that. So we would need to have that in order to prove that we were financially qualified. What is that? What are you talking about? The rental requirements, Your Honor. For example, how much income. $500 a month, right? What's that? $500 a month? Well, how much income was required? Was it, did they require? Paying it, I suppose. Well, that is the question. Is it simply, was the requirement simply that you pay the $500 a month? Well, he might have tried that, else he wouldn't have gotten evicted, right? Or, well, again, they were not evicted at the very beginning of their tenure at that place. They were evicted later on. And so the assumption is that they did pay for a while. And so the question then is when we're talking about financial qualifications, what sort of an income did Mr. Hiawatha-Hefteros have at the time? And if they were paying? So why didn't he put all that information in in opposition to the summary judgment and say, look, here, this raises at least a factual question because here's my financial qualifications. I have this kind of income. I have this kind of backup. Here's my tax returns. Here's a couple of checks. Here's this and that. And I think it's at least a factual issue. Don't grant summary judgment against me. But see, he didn't even do the bare minimum, did he? He did put in his financial qualifications, Your Honor. However, again, without knowing what the requirements for the rent is, because rental people often require a certain amount of income in order to qualify to rent. We don't know what that threshold was. And so it would be impossible for my client to prove that he had met that threshold. Well, your client didn't even argue to the district court. It was necessary for this information to respond, did he? No, Your Honor, he did not. So if he doesn't even argue it, how do I get it up in front of me? Well, Your Honor, he waived it. No, Your Honor, they had already the court had already ruled that they couldn't have discovery. And so and they had my clients had objected, had appealed that ruling to the district court. The district court again ruled that they did not have they could not due to any discovery. So it wouldn't have done any good for my clients to say, well, we need this discovery. The court had already declared as a sanction that they would have no discovery. We're left in a position of not knowing what difference discovery would have made. It's not immediately apparent that it would have made any difference at all. Well, again, Your Honor, unless we the the requirement is to know what the financial qualification know whether my clients were financially qualified to rent that apartment. And again, without knowing what that threshold is, they can't prove that. And again, Your Honor, these people share an income. They share an income. And in fact, the record shows that it was Monica Hefteros that actually had no income. It was Hiawatha Hefteros that had the income. And so to say that she is financially qualified and he isn't, it makes no sense. And so if she met the financial qualifications, then de facto, he did. But regardless, Your Honor, the discovery sanctions do matter because, again, we cannot prove the threshold of what the rental requirement was. And again, we can't prove how many units the Hefts had, how many how many rental units they had. Let me just ask you a question about the discovery sanctions. Rule 26F, meet and confer, never occurred. Correct. And the Hefteroses did not show up for the scheduling conference. Yes, Your Honor. So why aren't those two things in and of themselves sufficient to support the discretion that was exercised by the magistrate judge in saying enough is enough? Well, there are two reasons. One, Your Honor, actually there are three reasons. First of all, Your Honor, to say enough is enough, to prohibit a plaintiff who has the burden of proof to show up his case, to prohibit him from any discovery is a harsh sanction, perhaps the harshest that can happen without an outright dismissal of the case. In fact, it's an effective dismissal of the case. Well, it seems a little bit tough to argue that failure to have discovery is a harsh penalty in the case when in Oregon you don't get any discovery and they don't think it's harsh at all. I mean, if you go to the state court in Oregon, you don't get any discovery. I went there as a ambush. They loved it, and frankly, I did. It was a lot of nonsense, a lot of extra added cost that we don't want. We just went at it and did it. It's kind of hard to argue that just because you don't get discovery, it's that harsh a sanction when some states don't allow it at all. Well, Your Honor, I'm afraid I'm unfamiliar with Oregon law. However, in Nevada, it's considered an essential part of litigation. I'd like to focus for a moment, if you would, on the 60B1 motion for excusable neglect. The lower courts have used its discretion by failing to apply the Baroness test. In fact, when you look at the magistrate court's rejection of my client's they don't cover any of the factors. When the district court reviewed, again, the district court did mention that we were reaching three years and that that was undesirable, but they did not go into the other factors. Specifically, the lower court was obligated to decide whether to analyze the danger of prejudice to opposing party, the length of the delay, and its impact on the proceedings. I would say, in its view, that there was an adverse effect on the hefs. I think he used the phrase older hefs or elderly hefs, but anyway, an effect on them because of their age. Your Honor, the... Well, I mean, he did say that. He did say that. He did say that they were old. He said that, so he touched that base. Okay. The question is, what would have if they had simply rescheduled the hearing for another week? Well, that can always be asked. I mean, you've got a scheduled conference taking three years. It's not even had the kickoff conference in the 26th motion, and even if he had an excuse, neither she nor either of the kids had any excuse for not showing up at either the 26th conference or the scheduling conference before the court. Well, first of all, Your Honor, the idea that my clients tried to avoid the 26th conference, it's just simply false. Well, I've read the correspondence. It sure seems like they had little or any intention of doing so. I respectfully disagree, Your Honor. Clearly, at the end, I think it was the end of August, my clients, specifically Mr. Heffross, experienced health difficulties, and that's what led to the stay in discovery and the extension of the case management conference. Doesn't Bateman really say that the factors in the Breon's test are not exclusive but merely provide a framework with which to determine whether missing the filing deadline constitutes excusable neglect? Yes, Your Honor. Is that what it says? It does. And didn't the court then focus on whether this was, in their case, whether it was an excusable neglect or not? Yes, Your Honor. And so therefore, if the court engaged in determining whether it was an excusable neglect, what is my standard of review? Well, again, Your Honor... My standard of review, abuse of discretion? Yeah, your standard of review is abuse of discretion. So what I'm supposed to do then is say that this court, having entered into a framework and talking about excusable neglect, engaging in an equitable analysis, I'm supposed to say this is abuse. What happened here on this record, reading these letters and reading what happened in this particular matter, that's what you're suggesting? Your Honor, my time is run. May I answer a little more? I'd like the person to answer a little more, if that's okay. Yes, Your Honor, it was an abuse of discretion. Bateman does talk about how this is a framework. However, it says this is not an exclusive list. However, it does not say that you don't have... My position was that the four factors listed in Breon's are a minimum. The court can consider more, but that's the minimum that the court needs to examine before rejecting a 60-1 motion for excusable neglect. Thank you, Your Honor. Thank you, Mr. Richards. Mr. Keeley. Thank you, Your Honor. Please, the Court. I'm Michael Keeley. I represent Crystal and Werner Heft. I'd first like to say that as the court wants to hear from me regarding the allegations regarding my candor and regarding the statements that are made at the hearing and the context of those statements and the sequence of events that led up to that, I just assume, unless the court wants to hear about that, I just assume move on to the issue of the dispositive order. So I will address the dispositive order argument made by counsel that the magistrate's ruling denying discovery is a dispositive order. There's absolutely no case authority for that position. Counsel has not cited any whatsoever. He has relied upon cases and attempted to restate a test that says dismissal of a case is a dispositive order and therefore requires consideration of five factors. But this was not a dismissal. This was a prohibition of discovery. After the plaintiffs had already received my compliance with Rule 26 and received 150 pages of documents, my list of they got the initial disclosures. They didn't show up for the meet and confer. The court has read my letters, has read the correspondence and saw the effort that went into, the courteous effort that went into trying to find a time and place that worked for these plaintiffs. But every time there was another excuse. Counsel says that it's a dispositive order, but the cases don't. Prohibiting discovery is not a dispositive order. An order in limine is a dispositive order. An order saying that your doctor can't testify as an expert witness in a plaintiff's med mal case, that automatically is dispositive of the case. But what we have here is simply you can't do any discovery beyond what you've already received from Mr. Keeley. So there they were. They could have proceeded to put on a case. They could have asked for a trial. They could have gone up and taken the oath and testified in court as to their theories of their case. So I would submit that counsel has relied heavily on the theory that this is a dispositive order, and therefore the court abused its discretion in not applying the test that applies to dispositive orders. But that entire standard, that entire argument is invalid. The standard that applies here, Your Honor, is one that the magistrate must have acted clearly, erroneously or contrary to law. The magistrate has the authority under Rule 636A1, 28 U.S.C., excuse me, 636B1A, is given the authority to rule on discovery matters. This magistrate came into the hearing well-versed, had reviewed the record, had reviewed my proposed discovery plan and scheduling order, and had reviewed the statements that I made indicating that these individuals did provide initial disclosures and a proposed plan and discovery order, but they never showed up for the conference. I requested special scheduling at the request of the plaintiffs, and subsequent to them providing their initial disclosures to me, they filed a motion with the court telling the court that they had done their initial disclosures, that they had submitted a proposed discovery plan and attached those items as Exhibit 5, and indicated in their brief that they were in the process of being supplemented. However, between July of 2006, if I misstate the year, I apologize, in July of 2006 up to January of 2006, I never got another piece of paper. The only two pieces of paper I got were the lease that we had a copy of and had been provided in 2005 as an exhibit to one of their motions opposing dismissal, and a three-line letter. Considering the weight and the gravity of their complaint and their causes of action, I was anticipating boxes and boxes of materials. I was told in correspondence that's been provided to this court that they needed to get this done because they were in the process of moving and all these items were being boxed up. Then they told the court that it was in the process of being supplemented. So there was a litany of excuses, but I never got any discovery whatsoever other than the initial disclosures that I informed the court well before the hearing, and they had copies and they were well informed. So the court wasn't misled. This court has reviewed the magistrate's transcript of the hearing. She took some time to outline the history of the case, revealing her familiarity therewith, and she indicated that before I even spoke that she had decided that the plaintiffs had waived their right to participate in the case management. She didn't say that they had waived their right to conduct any discovery at that point, but she did say that they had waived their right to participate in case management and asked me what discovery I wanted to have. And for the record, I waived discovery under the circumstances, so the notion that waiving discovery or not having discovery as a dispositive order is ridiculous because we would have gone to trial, but we felt confident about our position on the motion for summary and judgment. Now, I would agree that the plaintiffs have waived their right to contest that they needed more discovery in order to respond to a Rule 56 motion. They never asked this, excuse me, they never asked the district court or the magistrate for discovery in order to respond to our motion for summary judgment. Let me ask you a more fundamental question about the merits of the case. It's a little unusual to inter-family dispute or intra-family dispute, but one of the difficulties I had with the district court is that adapting the McDonnell Douglas factors to the 1981 context, the district court said the last factor you have to meet is essentially the house or the rental property has to remain available. And then the district court said, but Monica rented it, therefore it's not available. And my concern about that analysis is if that's what that means, if you're somebody who potentially is discriminating, you can just quickly X off that criteria by renting it to somebody, thereby getting rid of the claim for discrimination. And that wouldn't make any logical sense, saying, okay, well, I rented it now to a white person, therefore it's, quote, not available, therefore you can't sue me under 1981. That can't possibly be what that statute means. So I appreciate your response on that. It is a tricky situation, but I think when we're talking about, we're engaging in sort of fiction in order to evaluate the legal standard. This is a house, these tenants were pre-selected. I mean, $500 for a three-bedroom house is a sweetheart deal. So because of the plaintiff, this house was pre-selected. My clients moved from California into Nevada, then bought another house, and it was never offered to anybody else. And we dispute that it was offered at all. It was acquired so that they could provide a place at a very nominal rent for the benefit of their daughter and her family. Well, I understand those circumstances, but the contract, in other words, the discrimination is against the husband, supposedly. But it's simultaneous. In other words, the allegation is that they offered it to Hiawatha Heft Ross first, and then offered it to their daughter. That's just not possible. I mean, that's not real. Because it was simultaneous, and the lease has Ross and Hiawatha Heft Ross. Well, so the question then is, by the time it gets to the district court, and by the time they make their claim, is the house available or not available under the law? Well, I think that a reasonable interpretation... It's like saying the person that you've claimed, who has claimed discrimination, now can't claim discrimination because the wife rents the house, but not him. I mean, so I know that they're... I don't want to split hairs, but it seemed like either you or the family or Well, I think that it's... I think a reasonable interpretation of available means that it's open for rental, open to the public. This house was never open. It was not open before the rental agreement was signed. It was committed. It was not available to do that. Does that make it... So there can never be a 1981 claim in that context? It was never available, Your Honor. That's our position. It was never really available. It was available to Monica, certainly. She's the daughter of the owners, and is the reason why they acquired the home in the first place. Was it available to the husband, who's African American? He was... His name was put on the lease. But after the eviction, was it available? After the eviction, it was not rented, and it was never occupied by anyone else. They got rid of it. Does the availability form make any difference if he were not financially qualified? Does the availability... Say that again? You put aside the availability issue, if the district court were correct that he did not raise a tribal issue with access to financial qualification. He didn't put any facts forward about it's his burden to satisfy the primary fishing base, but I don't think... So my question is, do we need to worry about it? I don't... I apologize, Your Honor. I don't think you even get there, because... I mean, counsel says he didn't know what the quote qualifications were. Did he make any effort to say he was qualified? He did provide some financial data? No financial data. I will state that I'm over my time, but I want to answer your questions. He made mere allegations. A lot of the proof are just referrals to claims he makes in a 300 paragraph complaint. So he made statements that he was getting disability, but he didn't provide... Nothing was in the form of a sworn affidavit, is that right? That particular information. There were plenty of affidavits, but that particular information was not... Nothing provided, Your Honor. Thank you.
judges: Rymer, McKeown, Smith M.